**RECEIVED**

**DEC 11 2017**

**BY MAIL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
__EASTERN__ DIVISION

MR. LAUTHA V. ANDERSON, SR. )
#512937 )
_____ )
_____ )
(Enter above the full name of the )
Plaintiff in this action. Include prison )
registration number.) )
 )
v. )
 )
CHANTAY GODERT; )
ROBERT HENDERSON; )
TAYLOR PRESTON; )
SGT. RUBINO; JEREMY HANSEN; )
Missouri Department of Corrections )
(Enter above the full name of ALL Defend- )
ant(s) in this action. Fed. R. Civ. P. 10(a) )
requires that the caption of the complaint )
include the names of **all** the parties. Merely )
listing one party and "et al." is insufficient. )
Please attach additional sheets if necessary. )

" **AMENDED COMPLAINT** "

Case No. **4:17CV2659 AGF**
(To be assigned by Clerk)

" **JURY TRIAL DEMANDED** "

In what capacity are you suing the defendants?

☐ Official
☐ Individual
☑ Both

---

**PRISONER CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**

I. PLACE OF PRESENT CONFINEMENT:

**Northeast Correctional Center, 13698 Airport Road, Bowling Green, Mo. 63334**

II. PREVIOUS CIVIL ACTIONS:

A. Have you brought any other civil actions in state or federal court dealing with the same facts involved in this action or otherwise relating to your confinement?

YES [ ]        NO [✓]

B. If your answer to "A" is YES, describe the action(s) in the space below. If there is more than one action, you must describe the additional action(s) on a separate piece of paper, using the same format as below.

1. Parties to previous civil action:

   Plaintiff: _____N/A_____

   _____N/A_____

   Defendant(s): _____N/A_____

   _____N/A_____

2. Court where filed: _____N/A_____

3. Docket or case number: _____N/A_____

4. Name of Judge: _____N/A_____

5. Basic claim made: _____N/A_____

   _____N/A_____

   _____N/A_____

6. Present disposition (Is the case still pending? Is it closed? If closed, was it appealed?):

   _____N/A_____

III. GRIEVANCE PROCEDURES:

A. Is there a prisoner grievance procedure at the institution in which you are incarcerated?

   YES [✓]          NO [ ]

B. Have you presented this grievance system the facts which are at issue in this complaint?

   YES [✓]          NO [ ]

C. If your answer to "B" is YES, what steps did you take: I filed an I.R.R., then a Grievance, and finally a Grievance Appeal, which is all the three steps.

D. If your answer to "B" is NO, explain why you have not used the grievance system: N/A N/A

IV. PARTIES TO THIS ACTION:

A. Plaintiff

1. Name of Plaintiff: Mr. Lautha V. Anderson, Sr.
2. Plaintiff's address: Northeast Correctional Center, 13698 Airport Road, Bowling Green, Mo. 63334
3. Registration number: 512937

B. Defendant(s)

1. Name of Defendant: Chantay Godert
2. Defendant's address: Northeast Correctional Center, 13698 Airport Road, Bowling Green, Mo. 63334
3. Defendant's employer and job title: Warden

4. Additional Defendant(s) and address(es): Please see Caption of this Complaint and also know that all Defendants can be located at the addresses set forth above herein.

-3-

V. COUNSEL

A. Do you have an attorney to represent you in this action?

    YES [ ]      NO [✓]

B. If your answer to "A" is NO, have you made an effort to contact an attorney to represent you in this matter?

    YES [✓]      NO [ ]

C. If your answer to "B" is YES, state the name(s) and address(es) of the attorneys you contacted and the results of those efforts:

Mr. Eric Abramson, ESQ., 4456 Naturalbridge Ave., St. Louis, Missouri 63115

D. If your answer to "B" is NO, explain why you have not made such efforts:

N/A

E. Have you previously been represented by counsel in a civil action in this Court?

    YES [ ]      NO [✓]

F. If your answer to "E" is YES, state the attorney's name and address:

N/A
N/A

-4-

## STATEMENT OF CLAIM:

On November 18, 2016, while I Mr. Lautha V. Anderson, Sr., was assigned to the Administrative Segregation Unit at Northeast Correctional Center, under investigation for two (2) charges of conspiracy to introduce norcotics in a Correctional Center, the Staff members at this institution came to my cell and told me to pack-up my property because I was being released from the Segregation Unit and placed in the prison's General Population area. However, I told these staff members that I could not possibly be getting out of the Segregation Unit, because of this investigation I was under for the two (2) charges of conspiracy, which were Major Conduct Violation issues, and furthermore I had never even participated in any Administrative Segregation Hearing, and nor had I signed any protective Custody Waiver forms.

At that time, a Sargeant Rubino, also came to my cell door and told me that per orders of Chantay Godert, Robert Henderson, Taylor Preston, Jeremy Hansen, and herself, I had to leave my cell in the Segregation Unit and go to the prison's General Population area, or I would be given a Conduct Violation, as well as physical force would be used against me for disobeying a direct order. I then explained my whole situation to Sargeant Rubino, and also told her that someone

has made a big mistake and is deliberately placing me in harms way, however, she then told me to take it up with the Caseworker in the General Population area, because I was leaving the Segregation Unit one way or another. She then threatened me again with giving me a Conduct Violation and/or using physical force against me if I did not pack-up my property and leave out of my cell and the Segregation Unit, to go into the prison's General Population area where my life was in danger. I then told Sargeant Rubino, that I did not want to go to General Population and that I wanted to go to protective custody because she and the other named Defendants was well aware that there was a threat on my life by the gang group ("Family Value"), and that there was a rumor out, that I was snitching to try to get out of my situation regarding the two (2) charges of Conspiracy to introduce norcotics into a Correctional Center. However, Sargeant Rubino, then told me that she did not care about what I was saying, nor what I was faced with, and that her concern was the need for my cell and that was the last time she would tell me to pack-up my property and leave the cell and the Segregation Unit.

As I exited my cell, I again also told Sargeant Rubino, that I did not even participate in any Administrative Segregation hearing to agree to go to General Population, and nor had I waived my right to go to Protective Custody or stay

(STATEMENT OF CLAIM (continued)):

in the prison's Segregation Unit for my safety, in accordance with the law and prison policy. In fact, I have to sign a Protective Custody needs assessment/waiver before I can even be placed in the prison's General Population area, but I was never even given a chance to do that also. (See My Exhibits A-B).

Furthermore, it was clearly wrong for an inmate to be in General Population while still under investigation such as I was, because there is no-where in MDOC Procedures that an inmate can be in General Population while under investigation for two (2) Major Conduct Violations, such as the ones issued against me, which shows that the named Defendants was deliberate indifference to my health or safety and that they violated my Due Process right by releasing me from the prison's Segregation Unit based on false and improper information, which resulted in the following events or incident:

On November 20, 2016, while I was going to the dinner meal, I was approached by several offenders who was associated with the "White Supremacis" prison gang "Family Value," and one of them asked me about a guy who was under the same investigation that I was under.

I told them all that I did not know anything,

(STATEMENT OF CLAIM (continued)):

However, the same guy who questioned me, stated that some staff officials where saying that I was snitching to try to get out of my situation regarding the norcotic charges, and also he asked me how I wind-up on the yard in General Population when everybody else was still in the prison's Segregation Unit... I again told him and the rest of them with him that I did not know anything, and I proceeded to walk on toward the chow hall to eat my dinner. But, when I got to the chow hall door, I felt something stinging crease my neck, but I did not know my throat/neck was cut until I sat down to eat my meal and an offender at the table told me that my neck was bleeding very bad. I then got up and left the chow hall and ran back to my assigned housing unit and cell, and I looked at my neck sliced open and paining and I became even more terrified and affraid... I had never been affraid as I was then, because there was prison staff involved, which made me not report the incident because I was in fear of my life and I did not know if I could trust any staff member because they were the ones who had put the rumor out that I was a snitch. So, I stayed in my cell, scared to death, anxiously waiting for them to call lock down for the night, and I tried to stop the bleeding. However, I was in great pain and my neck would not stop bleeding and so at 4:00 a.m., the next morning I alerted the prison staff about the whole situation. I then went to the

(STATEMENT OF CLAIM (Continued)):

prison's medical unit, wherein my neck injury was treated by nurse Ms. Heather Swopes. (See Exhibits C-D).

Thereafter, I then was taken back to the prison's Segregation unit, wherein a Corrections Officer #3 (Lieutenant) took pictures of my neck injury.

The named Defendants were clearly deliberately indifference to my health or safety and violated my Due Process rights as well... They had no regards for my life or well being and they were very cruel in their duties regarding this, because again on November 27, 2016, just one week after I had my neck/throat cut by a inmate, in the General Population area, which was well known by the named Defendants, they again forced me out of the prison's Segregation unit, refused to give me protective custody, and instead forced me to go back into the prison's General Population area where I got my neck/throat cut by an inmate, and where my life is still in great danger. In fact, this error by the named Defendants is being mentioned by Ms. Roxanne Gaston and Mr. Rickie Painter. (See Exhibit-E).

In Conclusion, I refused to participate in my November 18, 2016, Administrative Segregation Hearing, because I knew that I would only get more confinement time due to me being placed under investigation for the two (2) Major Conduct Violations regarding

(STATEMENT OF CLAIM (Continued)):

○ the two (2) norcotic charges. (See Exhibit-A).

The Defendants cannot take my right to go to Protective Custody when my life is in danger and if and when I should choose to go there, which is not in accordance with my Due Process and Equal Protection rights. (See Exhibit-B). But the Defendants did by forcing me to go to the prison's General Population by way of threats of punishments, which resulted in my neck/throat being cut open and me being subjected to a serious risk of harm, where I could have died as a result of their deliberate indifference and their failure to follow the Standard Operating procedure handed down by the Missouri Department of Corrections.

I repeatedly tried to make the Defendants and other prison staff aware that I was not suppose to be released to the prison's General Population area, they were doing wrong, and that my life was in danger. However, they all refused to listen to me or even check on the information I was giving them and that they were already aware of.

Had the named Defendants (Staff at N.E.C.C.) not deliberately erred and forced me to go to the prison's General Population area my neck/throat would not have been cut open and I would not have undergone such pain from that

VII.  RELIEF

State briefly and exactly what you want the Court to do for you. Do not make legal arguments. (Note: If you are a **state** prisoner and you seek from this Court relief that affects the length or duration of your imprisonment, your case **must** be filed on a § 2254 form.)

I would like the Court to make the Defendants give me the money damages that I request below herein, and also grant me Declaratory relief and Injunctive relief, and any other relief the Court deems fair and Just, which includes the Defendants paying all costs for this present matter.

VIII. MONEY DAMAGES:

A) Do you claim either actual or punitive monetary damages for the acts alleged in this complaint?

YES ☑   NO ☐

B) If your answer to "A" is YES, state below the amount claimed and the reason or reasons you believe you are entitled to recover such money damages:

I believe that I am entitled to both $100,000 for actual damages, $100,000 for punitive damages due to my pain and suffering the serious risk of harm I faced and where I could have been killed.

IX. Do you claim that the wrongs alleged in the complaint are continuing to occur at the present time?

YES [✓]   NO [ ]

_____
Signature of attorney or pro se Plaintiff

December 1, 2017
Date

-6-