UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAUTHA V. ANDERSON, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:17-cv-02659-AGF |
| | ) |
| CHANTAY GODERT, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter under 42 U.S.C § 1983, is before the Court on the motion (ECF No. 58) for summary judgment filed by Defendants Jeremy Hansen, Monica Rubino, and Taylor Preston, the only remaining Defendants in this action.[1] Plaintiff Lautha Anderson claims that Defendants, correctional officers at the Missouri state prison where Plaintiff was incarcerated, violated Plaintiff's constitutional rights by failing to protect him from an assault by another inmate. For the reasons set forth below, the motion for summary judgment will be denied.

## BACKGROUND

For the purpose of the motion before the Court, the record establishes the following facts. At some time before November 18, 2016, Plaintiff was placed in an administrative segregation unit because he was being investigated for two charges of conspiracy to introduce narcotics into the prison.[2] Conspiracy to introduce narcotics constituted a

---

[1] Two other Defendants, Chantay Godert and Robert Henderson, joined in the motion but have since been voluntarily dismissed from this case by Plaintiff.

[2] The parties do not identify when Plaintiff was placed into administrative segregation, but from a review of the record, it appears that Plaintiff had been in

major conduct violation under prison policy and, if found guilty, Plaintiff would have faced punishment.

On November 18, 2016, a classification hearing was held with respect to Plaintiff, but Plaintiff refused to participate.[3] The same day, three prison staff came to Plaintiff's administrative segregation cell. One of these staff members was Defendant Rubino. Plaintiff asserts that the other two were Defendants Hansen and Preston. Plaintiff attests by affidavit that he knew the identities of Hansen and Preston because he had personally seen and interacted with both of them before and, as to Hanson, he observed Hanson's name tag at the time.[4]

After arriving at Plaintiff's cell, Rubino told Plaintiff that he had to leave the administrative segregation unit and go to the general population. Plaintiff attests by affidavit that, at this time, he explained to all three Defendants that there was a specific threat on his life if he went to the general population, that the inmates making these threats belonged to a prison gang known as the Family Value gang, that those threats resulted from the gang's belief that Plaintiff was a "snitch," and that letting Plaintiff out of administrative segregation without any punishment or questioning and after spending only

---

administrative segregation for approximately 30 days prior to November 18, 2016.

[3] Although Plaintiff denies this statement of fact, he cites no evidence in support of his denial or to contradict Defendants' evidence on this point. *See* ECF No. 73 at ¶ 9; *see also* ECF Nos. 60 at ¶ 9, 60-1 at p. 9 & 60-2.

[4] Defendants dispute that either Hansen or Preston was present at Plaintiff's cell on November 18, 2016 during the events in question. Defendants rely on Plaintiff's prison grievance form, which does not name Hansen or Preston; on Hansen and Preston's responses to Plaintiff's requests for admission ("RFA"), in which both Defendants deny that they were present; and on an affidavit of Preston attached to Defendants' reply brief, in which Preston repeats that he was not present.

30 days in the unit, despite the two major charges of conspiracy to introduce narcotics into the prison, would only reinforce the gang's belief that Plaintiff was a snitch.  Plaintiff attests that all three Defendants ignored his pleas, and that Rubino told him that if he did not leave administrative segregation, he would be given a conduct violation and would be physically removed.[5]

Plaintiff was then escorted to the general population; Plaintiff asserts that all three Defendants escorted him, but Defendants dispute that Hansen or Preston was present. Within 48 hours after his transfer to the general population, while Plaintiff was on his way to the dining room, Plaintiff was approached by several inmates associated with the Family Value gang.  One such inmate accused Plaintiff of being a "snitch" in connection with his narcotic charges and his transfer out of administrative segregation.  *See* ECF No. 6 at 7-8.  Plaintiff responded that he did not know anything and proceeded to walk toward the dining room.  However, he soon felt a stinging sensation in his neck and realized that another inmate had sliced the side of his neck and ran away.  The record does not reflect the identity of Plaintiff's attacker.

Following the attack, Plaintiff was in immediate pain and his neck began to bleed. Plaintiff ran back to his cell, where he remained locked all night.  His neck continued to bleed during this time, but the bleeding was controlled.  The next morning, Plaintiff

---

[5] Defendants admit that Rubino told Plaintiff that he was being transferred to the general population and that he would be given a conduct violation if he disobeyed the order, but they otherwise dispute Plaintiff's assertions.  Defendants rely on Rubino's RFA response denying that Plaintiff informed her that there were threats on his life or that he was at risk of attack if he went to general population, and denying that she told Plaintiff physical force would be used to remove him; and on the other Defendants' RFA responses and Preston's affidavit stating that they were not present during Plaintiff's transfer.

stopped a corrections officer, showed him his neck, told him he needed medical attention and the corrections officer took Plaintiff to get medical treatment.   Plaintiff thereafter requested protective custody and was placed into such custody on November 21, 2016.

Plaintiff filed this lawsuit pro se on October 30, 2017.[6]   Following the filing of an amended complaint, a review pursuant to 28 U.S.C. § 1915(e), and the voluntary dismissal of some Defendants, the sole remaining claim is that Defendants Rubino, Hansen, and Preston failed to protect Plaintiff from the assault in violation of the Eighth Amendment.  Plaintiff seeks actual and punitive damages for his injuries.   The Court appointed counsel for Plaintiff on April 5, 2019.

On February 28, 2020, Defendants filed this motion for summary judgment.   They argue that summary judgment is proper as to all Defendants because Plaintiff did not sufficiently identify the inmates who made threats against him and because complaints of "general fear" for safety cannot establish that a defendant acted with "deliberate indifference" to a Plaintiff's safety, as required for Plaintiff to prevail on his claim.  Defendants assert that, even if Plaintiff told them that "inmates from the Family Value gang were making threats against him because they believed him to be a snitch and releasing him from administrative segregation would reinforce that belief[,] . . . Plaintiff does not state he identified specific inmates that threatened him by name."   ECF No. 84 at 4.   As such, Defendants argue that Plaintiff cannot prove a constitutional violation and that they are also entitled to qualified immunity.

---

[6]   Defendants do not dispute that Plaintiff exhausted the prison's administrative remedies.

## DISCUSSION

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

"To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018).

**Failure to Protect From Other Inmates**

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A correctional official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. *Id.* To

be liable, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837.

However, an inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010) (citation omitted). More importantly as it pertains to this case, the prison official cannot escape liability for deliberate indifference by showing that he did not know that the inmate was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer,* 511 U.S. at 843.

Here, taking the facts in the light most favorable to Plaintiff, a reasonable juror could find that all three Defendants were present at the scene, had actual knowledge of a substantial risk of harm to Plaintiff by ordering Plaintiff to move to the general population, and failed to respond reasonably to that risk, resulting in injury to Plaintiff.[7] *See, e.g., Young*, 508 F.3d at 873-74 (affirming the denial of summary judgment to a correctional officer on qualified immunity grounds, where the record contained sufficient evidence to support a finding that the officer knew of a threat where the inmate reported that he had been threatened and that he needed to be moved immediately, and the defendants had no evidence to the contrary). Defendants' reliance on *Robinson v.*

---

[7]     It can be reasonably inferred from the record, and Defendants do not dispute, that Plaintiff's attacker was a member of the Family Value gang.

*Cavanaugh*, 20 F.3d 892 (8th Cir. 1994) (per curiam), is unavailing as in that case, the plaintiff merely stated that he feared "someone" would attack him without either a name of his potential attacker or any evidence that he was in danger. 20 F. 3d at 894-95.

By contrast, viewing the facts in Plaintiff's favor, Plaintiff specifically identified by gang name the group of inmates that he believed posed a threat and explained the basis for his belief. Defendants do not contend that Plaintiff's explanation was implausible or not credible, or that there some other reason to doubt that the threat was serious. *Cf. Blair v. Bowersox*, 929 F.3d 981, 988 (8th Cir. 2019) (granting summary judgment on a prisoner's failure-to-protect claim arising from his return to general population where the prisoner may have voiced his concerns "about there being a hit out on him" to officials but "there [was] no evidence [the prisoner] knew who ordered it or who [the prisoner's] enemies in general population may have been," such that the prisoner's suspicion amounted to mere conjecture).

Defendants merely argue that Plaintiff was required to identify his future attackers by name. However, the applicable law imposes no such requirement, and the Supreme Court has cautioned against imposing one. *Farmer*, 511 U.S. at 843. This is so because "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* Rather, what matters is the relevant defendant's subjective awareness, which includes the

7

inmate's complaints along with any other information that the defendant may have. *See id.* at 842.

As to qualified immunity, it was clearly established at the time of these events that failing to take responsive action after knowledge of the victim's reasonable and reported fear of an attack by gang members constituted deliberate indifference. "For a right to be 'clearly established,' the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (citation omitted). This requires "controlling authority " or a "a robust consensus of cases of persuasive authority'" to place the question "beyond debate." *Swearingen v. Judd*, 930 F.3d 983, 987 (8th Cir. 2019) (citations omitted). "[T]he critical question is not whether prior cases present facts substantially similar to the present case but whether prior cases would have put a reasonable officer on notice that the [failure to respond] in these circumstances would violate the individual's [constitutional rights]." *Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) (citation omitted).

Prior cases would have put a reasonable officer in Defendants' position on notice that the failure to respond here would violate Plaintiff's rights under the Eighth Amendment. While Hansen and Preston deny they were present at the scene, that is an issue of fact for resolution by the jury. Under Plaintiff's facts, accepted as true, Defendants would not be entitled to qualified immunity. *See, e.g.*, *Young*, 508 F.3d 874-875 (denying summary judgment based on qualified immunity where the plaintiff

adduced sufficient evidence of prison official's actual knowledge by testifying that he informed defendants of the identity of the person who threatened him, the nature of the threat, and enough context to render the threats plausible); *see also Sinn v. Lemmon*, 911 F.3d 412, 420-22 (7th Cir. 2018) (rejecting qualified immunity defense as to assault that took place in 2014, where the plaintiff adduced evidence that the prison official knew that the plaintiff had once been assaulted by suspected gang members in the past and the plaintiff told the official he feared another assault because he was a racial minority unaffiliated with any gang, even though the plaintiff did not identify the future attacker or gang by name).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **DENIED**. ECF No. 58

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2020.

9